UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cr-114-JMS-DKL-1 |
| | ) | |
| JAMES V. CARROLL, | ) | |
| *Defendant*. | ) | |

## ORDER DENYING MOTION TO SUPPRESS

Presently pending before the Court is Defendant James V. Carroll's Motion to Suppress. [Dkt. 42.] Mr. Carroll moves to suppress all evidence obtained as the result of the execution of a search warrant at his home, where police discovered sexually explicit images of a minor that Mr. Carroll confessed to producing. For the following reasons, the Court denies Mr. Carroll's motion.

## I.
## BACKGROUND[1]

On February 7, 2012, a thirteen-year-old girl ("Girl 1") reported to law enforcement and child protection authorities that she had been molested by Mr. Carroll, a friend and coworker of her father, when she was eight years old. [Dkt. 46-1 at 3.] Girl 1 stated that Mr. Carroll had stayed at her house and occasionally babysat her. [*Id.*] She reported that Mr. Carroll had fondled her underneath her clothing when they were on a couch. [*Id.*] Girl 1 also reported that Mr. Carroll showed her digital images on his camera of partially undressed children younger than her. [*Id.*] Girl 1 described a separate incident where a man that she believed to be Mr. Carroll

---

[1] Neither party requested an evidentiary hearing and, as Mr. Carroll confirms on reply, there are no disputed facts warranting one. [Dkt. 52 at 12.]

entered her bedroom, lifted her gown, and photographed her bare genitalia. [*Id.*] She knew that Mr. Carroll was a professional photographer. [*Id.*]

Girl 1's father informed law enforcement that he worked with Mr. Carroll, that Mr. Carroll had a desktop computer in his office, and that Mr. Carroll took his camera to and from the office and his residence on a daily basis. [*Id.*] The father knew Mr. Carroll to use a large number of thumb drives or memory sticks and use the camera in conjunction with the computer. [*Id.*]

On March 1, 2012, Detective Kurt Spivey of the Indianapolis Metropolitan Police Department executed probable cause affidavits seeking warrants from the Marion Superior Court to search Mr. Carroll's residence and office. [Dkt. 46-1.] Detective Spivey had been a law enforcement officer for sixteen years and had primarily been responsible for child pornography, child exploitation, and child solicitation investigations for seven years. [*Id.* at 2.]

In support of the search warrant requests, Detective Spivey relied on the information provided by Girl 1 and her father. [*Id.* at 3.] Detective Spivey also set forth a summary of his knowledge and understanding of collectors of child pornography and electronic evidence. [*Id.* at 2-3.] The issuing judge on the Marion Superior Court found that Detective Spivey's affidavits established probable cause and issued the requested warrants on March 1, 2012. [Dkts. 45-3; 45-4; 46-2 at 1.]

The warrants were executed on March 2, 2012. [Dkt. 46-2 at 1.] Mr. Carroll waived his *Miranda* rights and agreed to speak to Detective Spivey without the presence of an attorney. [Dkts. 46-2 at 1; 45-6 at 2 ¶¶ 5-6.] During the interview, Mr. Carroll admitted to searching for and collecting images of possible child pornography. [Dkt. 46-2 at 1.] He also admitted to "touching the vagina of the 8 year old victim through her clothing." [*Id.*] A collection of Girl

1's underwear was found during the search, as was an image of a prepubescent female victim believed to be Girl 1 with her hand on the penis of an adult male believed to be Mr. Carroll. [*Id.*]

Based on that image and another image found during the search, on March 6, 2012, Detective Spivey sought a second warrant to search Mr. Carroll's residence for men's underwear depicted in the images and to take photographs of Mr. Carroll's unclothed body for identification purposes. [*Id.*] That warrant was issued and executed the same day. [Dkts. 45-7; 45-6 at 2 ¶¶ 8-9.] Mr. Carroll waived his *Miranda* rights and agreed to speak to Detective Spivey without the presence of an attorney. [Dkt. 45-6 at 2 ¶ 10.] During the interview, Mr. Carroll again stated that while he was babysitting Girl 1, he touched her vagina over her clothes while they were watching television on the couch. [*Id.* at 3 ¶ 11.] Mr. Carroll said that he took pictures of Girl 1 while she was sleeping and while she was awake, including the photos of her displaying her bare genitalia. [*Id.* at 3 ¶¶ 11, 13.] Mr. Carroll told Detective Spivey that he had a sexual attraction to children, would search websites seeking sexually explicit images of children, and that on several occasions he masturbated while looking at pictures of Girl 1. [*Id.*] Mr. Carroll also admitted that he had traded images of children engaged in sexually explicit activity with unknown individuals on the Internet. [*Id.*]

On March 14, 2012, Detective Spivey and Special Agent Ryan Barrett with the Federal Bureau of Investigation interviewed Mr. Carroll at his residence. [Dkt. 45-8 at 1 ¶ 1.] Prior to questioning, Mr. Carroll read and signed an "Advice of Rights" form. [*Id.*; *see also* dkt. 45-9.] During the interview, Mr. Carroll was shown numerous images that were recovered from his computer. [Dkt. 1 at 4 ¶ 11.] He admitted that all of the images were of Girl 1 and that he had taken them. [*Id.*] Analysis of Mr. Carroll's computer revealed five images of Girl 1 in various states of undress. [*Id.* at 4-5 ¶ 12.]

On March 16, 2012, the Government sought a criminal complaint against Mr. Carroll, alleging the production and possession of child pornography. [Dkt. 1.] An arrest warrant was issued, [dkt. 2], and Mr. Carroll was interviewed on March 19, 2012, after again waiving his *Miranda* rights, [dkt. 45-10]. During the interview, Mr. Carroll was shown a series of photographs of young girls in swimwear. [Dkt. 45-8 at 1 ¶ 5.] Mr. Carroll identified the images as ones he had taken and posted on a website. [*Id.* at 1-2 ¶ 5.] Mr. Carroll also admitted that he had emailed pictures of Girl 1 to other people, and that he had taken underwear out of her room as a keepsake. [*Id.* at 2 ¶ 7.] Mr. Carroll was arrested that day. [Dkt. 10.]

## II.
### FOURTH AMENDMENT

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. When a search is authorized by a warrant, the Court gives "great deference to the issuing judge's conclusion that probable cause has been established." *United States v. Sims*, 551 F.3d 640, 643-44 (7th Cir. 2008). The Court defers to the issuing judge's initial probable cause finding if there is "substantial evidence in the record that supports his decision." *Id.* at 644.

When an affidavit is the only evidence presented to support a search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Mykytiuk*, 402 F.3d 773, 775 (7th Cir. 2005) (citation omitted). A search warrant affidavit establishes probable cause when "it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* The issuing judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular

place." *Sims*, 551 F.3d at 644. The judge may not, however, solely rely upon conclusory allegations or a bare bones affidavit to issue the warrant. *Id.*

## III.
### DISCUSSION

Mr. Carroll argues that at the time the search warrant was sought, "the information supporting the warrant request was five years old." [Dkt. 43 at 3.] Therefore, he argues that the information was impermissibly stale because the facts supporting the affidavit were not sufficiently close in time to support a finding of probable cause. [*Id.*]

In response, the Government relies on a recent case by the Seventh Circuit Court of Appeals as support for its argument that the information was sufficient to support probable cause. [Dkt. 45 at 9-13 (citing *United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012)).] Even if there were not probable cause, the Government argues that the evidence should not be suppressed because the officers acted in good faith.[2] [*Id.* at 12-13.] The Court will address these arguments in turn.

**A. Probable Cause**

Mr. Carroll relies on the Seventh Circuit Court of Appeals' decision in *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008), to support his position, while the Government emphasizes *United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012). The Court will follow the analysis set forth in *Seiver*, considering that it is the more recent Seventh Circuit case on this issue and specifically criticizes the rationale in *Prideaux-Wentz*, on which Mr. Carroll relies.

---

[2] The Government presents a second alternative argument that even if probable cause were lacking and the good faith exception did not apply, Mr. Carroll's motion should be denied because his four separate confessions "attenuated any alleged taint from the initial search." [Dkt. 45 at 1-2.] The Court finds it unnecessary to reach this argument considering that it concludes that probable cause existed for the search warrant and, even if not, Detective Spivey acted in good faith.

- 5 -

In *Seiver*, a detective attested that law enforcement authorities discovered that a pornographic video a thirteen-year-old girl had made and uploaded to the Internet had been downloaded to a computer at Mr. Seiver's home and that three pornographic still images from that video had been uploaded from his home to an image-sharing website. 692 F.3d at 775. Mr. Seiver argued that the warrant affidavit lacked probable cause because the information on which it relied was stale—i.e., "there was no reason to believe that seven months after he had uploaded child pornography there would still be evidence of the crime on his computer." *Id.* The Seventh Circuit held that Mr. Seiver's concern with staleness "reflects a misunderstanding of computer technology." *Id.* at 776. *Seiver* criticized other decisions, including *Prideaux-Wentz*, for "laboring under the misapprehension that deleting a computer file destroys it, so that if the defendant had deleted the pornographic images between their uploading to the Internet and the search of his computer the search would not have yielded up the images, or evidence of their earlier presence in the computer." *Id.* Specifically, the Seventh Circuit explained:

> When you delete a file, it goes into a "trash" folder, and when you direct the computer to "empty" the trash folder the contents of the folder, including the deleted file, disappear. But the file hasn't left the computer. The trash folder is a wastepaper basket; it has no drainage pipe to the outside. The file *seems* to have vanished only because the computer has removed it from the user interface and so the user can't "see" it any more. But it's still there, and normally is recoverable by computer experts until it's overwritten because there is no longer unused space in the computer's hard drive.

> ***

> "Staleness" is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but rarely relevant when it is a computer file. Computers and computer equipment are not the type of evidence that rapidly dissipates or degrades. Because of overwriting, it is *possible* that the deleted file will no longer be recoverable from the computer's hard drive. And it is also *possible* that the computer will have been sold or physically destroyed. And the longer the interval between the uploading of the material sought as evidence and the search of the computer, the greater these possibilities. But rarely will they be so probable as to destroy probable cause to believe that a search of the computer will turn up

the evidence sought; for probable cause is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Notice too that even if the computer is sold, if the buyer can be found the file will still be on the computer's hard drive and therefore recoverable, unless it's been overwritten. The search warrant will have designated the premises where the computer was expected to be found, and though a computer sold by the occupant will obviously no longer be there, evidence may be found there of the buyer's identity.

*** 

No doubt after a *very* long time, the likelihood that the defendant still has the computer, and if he does that the file hasn't been overwritten, or if he's sold it that the current owner can be identified, drops to a level at which probable cause to search the suspect's home for the computer can no longer be established. But seven months is too short a period to reduce the probability that a computer search will be fruitful to a level at which probable cause has evaporated. . . . The most important thing to keep in mind for future cases is the need to ground inquiries into "staleness" and "collectors" in a realistic understanding of modern computer technology and the usual behavior of its users. Only in the exceptional case should a warrant to search a computer for child pornography be denied on either of those grounds (there are of course other grounds for denial).

*Id.* at 776-78 (original emphases) (citations omitted).

In light of the Seventh Circuit's analysis in *Seiver*, the Court concludes that Detective Spivey's affidavit established probable cause to support issuing a warrant to search Mr. Carroll's home. Specifically, Detective Spivey set forth what he had been told by Girl 1 and her father, including that Girl 1 reported that she had been fondled by Mr. Carroll when she was eight-years-old, that he had shown her inappropriate pictures of younger children, and that she believed he had entered her bedroom and taken pictures of her bare genitalia while he believed she was sleeping. [Dkt. 46-1 at 3.] Although five years had passed since those alleged events, Detective Spivey emphasized that Girl 1's father told him that Mr. Carroll was a professional photographer who took his camera to and from work on a daily basis and used it in conjunction with his computer. [*Id.*] Detective Spivey also set forth a detailed summary of his knowledge and understanding of collectors of child pornography and electronic evidence:

> Collectors of child pornography go to great lengths to secure, preserve, protect, organize and maintain their collections. These collections also hold great value for the collector due to their direct purpose of supplying sexual gratification, difficulty in obtaining and replacing said collection, the illegal nature of child pornography with threat of prosecution, avoidance of the highly negative stigma that is attached to the pedophile or collector. For the collector, each image has great potential value when used to trade for new images.
>
> It is also known that collections of child pornography, unlike narcotics, are not simply used up. These images are retrievable as evidence through a forensic process for years. These images may be retrieved, even after being deleted. I know that people in general are very hesitant to simply discard computers or digital memory in fear of the theft of personal information, financial information, possibilities of identity theft or simply the improper use or unintended use of information by unauthorized people. This is even more the case when that digital storage knowingly has illegal images which could result in prosecution. It is very common to find discarded or outdated computer storage in closets, basements or attics for long periods of time. In the past, I have found images that were digitally stored and currently utilized for sexual gratification, up to five years after that image was created.
>
> With todays' technology, images may be copied with the touch of a button. Memory sticks, sims cards and other storage devices now allow users to simply move the images from one device or storage area to another with great ease and speed. This allows for images to be placed on multiple devices within a house. These devices are not only used to copy and move images, but they offer great storage capabilities as well. They provide a highly mobile source of storage which can easily be removed from the computer device and hidden. . . .

[Dkt. 46-1 at 2-3.]

The Court concludes that Detective Spivey's affidavit established probable cause because it set forth sufficient evidence to induce a reasonably prudent person to believe that a search would uncover evidence of Mr. Carroll's crime. Specifically, Detective Spivey relayed Girl 1's accusations, corroborated the allegations he could with Girl 1's father, and got additional information from Girl 1's father regarding Mr. Carroll's use of a camera and a computer. [*Id.* at 3.] Although Girl 1's accusations were about events she alleged occurred five years prior, Detective Spivey promptly applied for the search warrant approximately one month after those accusations were made. [*Id.*] Additionally, Detective Spivey relayed his working knowledge of collectors of

child pornography, including the fact that unlike narcotics, collections of child pornography cannot simply be used up. [*Id.* at 2-3.] For these reasons, the Court rejects Mr. Carroll's staleness arguments because, as *Seiver* held, staleness arguments are "rarely relevant when it is a computer file [because c]omputers and computer equipment are not the type of evidence that rapidly dissipates or degrades." 692 F.3d at 777.

Mr. Carroll's only other argument, set forth for the first time on reply, is that probable cause did not exist because Indiana's five-year statute of limitations for possession of child pornography had expired. [Dkt. 52 at 5-6.] But the affidavit also sought a warrant for evidence of child molestation, [dkt. 46-1 at 3], a crime for which the statute had not run, *see* Ind. Code § 35-41-4-2 (allowing a prosecution for child molesting to commence before the victim is thirty-one-years old). Mr. Carroll appears to concede this point later in his reply. [*See* dkt. 52- at 7 ("[T]he statute of limitations had expired *for one* of the crimes for which they were to seek evidence.") (emphasis added).] Moreover, given that Girl 1 accused Mr. Carroll of entering her bedroom and photographing her bare genitalia while he thought she was asleep, the allegations of the two crimes were at least somewhat related.

As emphasized in *Seiver*, "probable cause is far short of certainty" and the affidavit must show only a "probability or substantial chance of criminal activity, not an actual showing of such activity." 692 F.3d at 777. The Court concludes that standard was met here and the search warrant was valid. Accordingly, the Court denies Mr. Carroll's motion to suppress.

**B. Good Faith Exception**

The Government argues that even if the search warrant affidavit was not supported by probable cause, the good faith exception should apply. [Dkt. 45 at 13-15.] Mr. Carroll argues that the good faith exception does not apply because the Court charges police officers with

child pornography, including the fact that unlike narcotics, collections of child pornography cannot simply be used up. [*Id.* at 2-3.] For these reasons, the Court rejects Mr. Carroll's staleness arguments because, as *Seiver* held, staleness arguments are "rarely relevant when it is a computer file [because c]omputers and computer equipment are not the type of evidence that rapidly dissipates or degrades." 692 F.3d at 777.

Mr. Carroll's only other argument, set forth for the first time on reply, is that probable cause did not exist because Indiana's five-year statute of limitations for possession of child pornography had expired. [Dkt. 52 at 5-6.] But the affidavit also sought a warrant for evidence of child molestation, [dkt. 46-1 at 3], a crime for which the statute had not run, *see* Ind. Code § 35-41-4-2 (allowing a prosecution for child molesting to commence before the victim is thirty-one-years old). Mr. Carroll appears to concede this point later in his reply. [*See* dkt. 52- at 7 ("[T]he statute of limitations had expired *for one* of the crimes for which they were to seek evidence.") (emphasis added).] Moreover, given that Girl 1 accused Mr. Carroll of entering her bedroom and photographing her bare genitalia while he thought she was asleep, the allegations of the two crimes were at least somewhat related.

As emphasized in *Seiver*, "probable cause is far short of certainty" and the affidavit must show only a "probability or substantial chance of criminal activity, not an actual showing of such activity." 692 F.3d at 777. The Court concludes that standard was met here and the search warrant was valid. Accordingly, the Court denies Mr. Carroll's motion to suppress.

**B. Good Faith Exception**

The Government argues that even if the search warrant affidavit was not supported by probable cause, the good faith exception should apply. [Dkt. 45 at 13-15.] Mr. Carroll argues that the good faith exception does not apply because the Court charges police officers with

knowledge of well-established legal principles and Detective Spivey should have known that according to *Prideaux-Wentz*, which had not yet been criticized by *Seiver*, information approximately four years old was stale and insufficient to support probable cause. [Dkt. 52 at 7.]

Even in the absence of probable cause, a warrant can "be saved by the good faith exception." *United States v. Olson*, 408 F.3d 366, 372 (7th Cir.2005). Mr. Carroll does not assert that the issuing judge was not neutral or was misled by information that Detective Spivey knew or should have known was false. Therefore, the Court will only suppress evidence obtained pursuant to a facially valid warrant if Detective Spivey could not have relied in objective good faith upon the decision to issue the warrant. *United States v. Koerth*, 312 F.3d 862, 865-66 (7th Cir. 2002). Whether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant is a legal question. *United States v. Harju*, 466 F.3d 602, 604 (7th Cir. 2006). "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." *Olson*, 408 F.3d at 372 (citing *Koerth*, 312 F.3d at 868). A defendant may, however, rebut this evidence if "the affidavit submitted in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 914, 923 (1984)).

The Court agrees with the Government that even if the warrant were not supported by probable cause, the good faith exception applies. Detective Spivey's working knowledge and understanding of technology and the tendencies of collectors of child pornography was set out in extensive detail in the affidavit, including his observation that "unlike narcotics, [collections of child pornography] are not simply used up." [Dkt. 46-1 at 2.] He linked Girl 1's allegations and her father's corroborations to Mr. Carroll's camera and computer and set forth a reasonable basis for requesting a search warrant based on his personal knowledge. Therefore, like the defendant

in *Prideaux-Wentz*, Mr. Carroll has failed to convince the Court that Detective Spivey did not act in good faith when he relied on the search warrant.

## VI.
### CONCLUSION

For the reasons detailed herein, the Court **DENIES** Mr. Carroll's Motion to Suppress. [Dkt. 42.]

03/11/2013

*Hon. Jane Magnus-Stinson, Judge*
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Gwendolyn M. Beitz
INDIANA FEDERAL COMMUNITY DEFENDERS
gwendolyn_beitz@fd.org

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE
steve.debrota@usdoj.gov

Zachary A. Myers
UNITED STATES ATTORNEY'S OFFICE
zachary.myers@usdoj.gov

Sara J. Varner
INDIANA FEDERAL COMMUNITY DEFENDERS
sara.varner@fd.org